[Cite as *Sediqe v. I Make the Weather Prods., Ltd.*, 2016-Ohio-4902.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Zalmai Sediqe | Court of Appeals No. L-15-1250 |
| Appellant | Trial Court No. CI0201403353 |
| v. | |
| I Make the Weather Productions, Ltd., et al. and Ammar B. Mufleh | |
| Appellees/Cross-Appellants | |
| v. | |
| Lailah Abawi and Sulaiman Abawi | **DECISION AND JUDGMENT** |
| Cross-Appellees | Decided: July 8, 2016 |

* * * * *

Martin J. McManus, for appellant.

William T. Maloney, for appellees.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, Zalmai Sediqe, appeals from the August 24, 2015 judgment of

the Lucas County Court of Common Pleas granting summary judgment to appellees, I

Make the Weather Productions, Inc. (hereinafter the "Company") and Ammar Mufleh ("Ammar"), and third-party defendants, Sulaiman Abawi and Lailah Abawi. The court dismissed the complaint of appellant and he appeals. Appellees/cross-appellants filed a cross-appeal from the same judgment which granted summary judgment to the Abawis. For the reasons which follow, we affirm.

{¶ 2} On appeal, appellant asserts a single assignment of error:

There was insufficient evidence to support defendant-appellee's Rule 56 Motion for Summary Judgment due to the presence of a genuine issue of material fact.

{¶ 3} Appellant brought suit against appellees asserting claims of unjust enrichment, conversion, and the creation of a purchase money resulting trust. He alleged he deposited $50,000 into an account controlled by the Abawis, the owners of the property at issue, with the belief that he was assisting a friend, Yaser Mufleh ("Yaser"), now deceased. Appellant further asserts the Company did not pay any consideration for the property and the parties intended that the Company hold title to the property solely for the benefit of Yaser. Appellees moved for summary judgment, which was granted on August 24, 2015. Appellant appeals.

{¶ 4} Appellees filed a third-party complaint against the Abawis seeking declaratory judgment and alleging a breach of the general warranty covenants in the deed. They sought indemnification and a ruling that the Abawis had a duty to defend against appellant's claims. The Abawis moved for summary judgment, which was also granted

2.

in the same August 24, 2015 judgment. The court found that because summary judgment was granted to appellees on appellant's claims, the only remaining issue was whether the Abawis owed a duty to defend the title. The court determined that appellant's claims do not create an encumbrance on the property when the property was transferred. Appellees filed a cross-appeal.

{¶ 5} The following evidence was presented by depositions and affidavits filed with the motion and memoranda in opposition to appellees' motion for summary judgment.

{¶ 6} Both the deposition and affidavit of Sulaiman Abawi were admitted in evidence. He testified that he was asked by appellant to assist him in protecting appellant's property from foreclosure. From December 2011 until April 2012, Abawi and his wife, Lailah, purchased, pursuant to an oral agreement, numerous properties from appellant on a short sale basis. The Abawis borrowed the money to purchase the properties and opened a bank account at the Farmers & Merchants State Bank. On April 3, 2012, appellant deposited into the Abawis' bank account $50,000 so the Abawis would not utilize any of their own funds. The intent was to resell the properties when the market rebounded. Abawi testified that he did nothing more than allow the transfers to be made using his credit standing. Abawi could not produce any documentation of the sales and could not remember how much he borrowed.

{¶ 7} Abawi further stated appellant sought out a buyer to purchase one of the properties located at 317 N. Superior Street, Toledo, Ohio, the property at issue in this

case.  Appellant retained an attorney to represent the Abawis and prepare a purchase agreement to transfer title to this property to the Company for $50,000 on June 11, 2012. Abawi attested appellant instructed the Abawis to transfer the property to the Company. Abawi stated he and his wife did not receive any other consideration other than appellant's money for the transfer of the property.  The Abawis did not receive anything of monetary value from Ammar, Yaser, or the Company.  Abawi assumed that the purchase money was used to pay off his loan but did not actually know this fact.  He had no idea whether he and his wife incurred a loss or made a profit on the sale because they left the matter entirely to appellant to handle.

{¶ 8} In his affidavit, appellant attested that he deposited in the Abawis' bank account $50,000 on "April 4, 2012," as consideration for the purchase of 317 N. Superior Street, Toledo, Ohio.  The affidavit was accompanied by unauthenticated copies of a deposit slip showing a total deposit on April 3, 2012, of $50,000 into the Abawis' bank account at the Farmers & Merchants State Bank.  While the deposit slip was dated March 3, 2012, the reverse side indicates the deposit was made on April 3, 2012.  Also attached were two unauthenticated checks (a check dated April 3, 2012 payable to the order of appellant for $12,500 and a check dated April 3, 2012 payable to the order of appellant for $28,000) and a "Cash in Ticket" of $9,500 cash deposited into the Farmers & Merchants State Bank on April 3, 2012.

{¶ 9} Appellant further attested he believed the property would be held in the name of the Company for the sole purpose of obtaining clear title and the property would

4.

be transferred to Yaser at a later date. However, Yaser died on October 6, 2012, prior to the transfer of the property to him. After his death, appellant demanded repayment of the purchase price from Ammar and the Company.

{¶ 10} Appellee, Ammar, attested he is the sole member of the Company, which purchased the property from the Abawis for $50,000. Ammar further attested that he learned from his brother, Yaser, the Abawis had property to sell which they had acquired from appellant's company in a short sale. Yaser was a friend of appellant. Ammar sought to purchase the property for $50,000 and the Abawis' counsel prepared the offer to purchase and the deed. Ammar attested he gave Yaser the funds to consummate the purchase on June 12, 2012, and the deed was transferred to the Company and given to Ammar. Ammar attested he had no information or reason to believe appellant had also given Yaser money to purchase the premises or that appellant held any right of ownership in the premises. After Yaser died on October 6, 2012, appellant asserted that Yaser's estate owed appellant $50,000.

{¶ 11} On appeal, appellant argues that the trial court erred in granting summary judgment to appellees. Applying the requirements of Civ.R. 56(C), we uphold summary judgment when it is clear "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have

5.

the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co., Inc.,* 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

## Unjust Enrichment

{¶ 12} The trial court granted summary judgment to appellees finding Ammar's affidavit supports a finding that appellees gave funds to Yaser to purchase the property at issue on behalf of appellees and that they were unaware that anyone else had given Yaser money for the same purpose. For this reason there was no question of material fact and appellant could not establish a material element of the claim of unjust enrichment, knowledge of the benefit. Appellant argues that the trial court erred in finding that there was evidence appellees gave Yaser funds to purchase the property.

{¶ 13} Unjust enrichment is a quasi-contractual theory of recovery. *Hummel v. Hummel*, 133 Ohio St. 520, 14 N.E.2d 923 (1938), paragraph one of the syllabus. To establish unjust enrichment, appellant was required to prove he conferred a benefit on appellees, appellees had knowledge of the benefit, and the circumstances are such that it would be unjust for appellees to retain the benefit without compensation. *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 20; *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984). Without some type of agreement or knowledge precipitating the enrichment, the enrichment is a voluntary act and is considered a gift. *Mitchell v. Thompson*, 4th Dist. Gallia No. 06CA8, 2007-Ohio-5362, ¶ 33-34.

6.

{¶ 14} The key facts in evidence are that appellant gave the Abawis an amount equal to the purchase price without the knowledge of appellees and appellees believe they had paid for the property. Ammar attested that he "gave Yaser funds to consummate the purchase." While appellant appears to be challenging the truth of this attestation, we must accept it as true for purposes of summary judgment. If appellant wanted to attack the veracity of the affidavit, he had to move to strike the affidavit or file additional evidence to refute the statements of fact made by Ammar. *See Samadder v. DMF of Ohio, Inc.*, 154 Ohio App.3d 770, 777, 2003-Ohio-5340, 798 N.E.2d 1141 (10th Dist.) and *Brady v. Carlson*, 9 Ohio App.3d 24, 25, 457 N.E.2d 1182 (1st Dist.1983). For summary judgment purposes, the court only considers whether there is a genuine issue of fact. In this case, there were no disputed facts. Both appellant and appellees claimed to have paid the purchase price for the property. The only remaining issue was whether appellees knew that appellant had paid the purchase price for their benefit. Ammar attested that he did not know about it.

{¶ 15} Therefore, we find the trial court did not err in finding appellant cannot maintain a claim of unjust enrichment against appellees.

### Purchase Money Resulting Trust

{¶ 16} As to the claim of reformation of the deed based on the equitable remedy of a purchase money resulting trust, the trial court found that the only evidence presented was that appellant expected the property to be transferred to Yaser, appellant instructed the Abawis to transfer the property to the Company, and appellees were unaware of

7.

appellant's payment of the purchase price and they also paid the purchase price. Therefore, the evidence demonstrates that two of the parties intended for the Company to be the beneficial owner of the property.

{¶ 17} Appellant argues the trial court erred in finding that there was no material fact that a purchase money resulting trust had been created. Appellant asserts that Yaser directed appellant to transfer the property to the Company because the property could not be directly transferred to Yaser. Since appellant paid the purchase price, but the property was not held by the Company for the benefit of Yaser, appellant asserts that a purchase money resulting trust was created and appellant should be a beneficial owner of the property.

{¶ 18} When a transfer of property is made to a person, who is not intended to be the beneficial owner of the property, and the purchase price is paid by another, a purchase money resulting trust arises in favor of the person who paid the purchase price. *Fannie Mae v. Winding*, 2014-Ohio-1698, 10 N.E.3d 799, ¶ 41-42 (12th Dist.); *Brate v. Hurt*, 174 Ohio App.3d 101, 2007-Ohio-6571, 880 N.E.2d 980, ¶ 28 (12th Dist.); *Cayten v. Cayten*, 103 Ohio App.3d 354, 359, 659 N.E.2d 805 (11th Dist.1995). This equitable remedy arises in favor of the person who transferred property or purchased property without the intent to transfer the beneficial interest to the one who took legal title. *PNC Bank, N.A. v. Lewis*, 5th Dist. Stark No. 2013CA00062, 2013-Ohio-5308, ¶ 9. The intent of the parties is the controlling fact in determining whether the equitable remedy should be applied to the circumstances. *Id.*

8.

{¶ 19} A typical case involves one party paying the purchase price and agreeing that another party would take legal title to the property for the benefit of the party paying the purchase price. In the case before us, however, appellant did not own the property to be transferred. Appellant attested he paid the purchase price so the Abawis would transfer their property to a third party, the Company, for the benefit of a fourth party, Yasser, and not himself. Ammar testified, however, that he was unaware of appellant's payment of the purchase price or that appellant would have any interest in the property and has maintained the property as the legal owner. Dr. Abawi testified only that he intended to transfer the property to the Company as directed by appellant.

{¶ 20} Therefore, we find the evidence does not support a finding that all the parties intended to give appellant or Yaser a beneficial interest in the property. The trial court properly granted summary judgment on this issue.

### Conversion

{¶ 21} As to the claim of conversion, the trial court found that there was no evidence appellees took possession or control over appellant's money. Appellant asserts that there was a genuine issue of fact as to his claim of conversion of the purchase money he paid to the Abawis to have the property transferred to the Company. Appellant asserts that there was evidence that he paid for the property to be transferred for the benefit of Yaser. Because the Company exercised full legal control over the property, appellant asserts the purchase money he provided should be returned to him.

9.

**{¶ 22}** "[C]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96, 551 N.E.2d 172 (1990). The prima facie elements of a claim of equitable conversion are: (1) plaintiff owned or had a right to possess property at the time of its conversion; (2) defendant had possession of plaintiff's property and wrongfully refused to deliver it to plaintiff; and (3) plaintiff suffered damages as a result. *Peirce v. Szymanski*, 6th Dist. Lucas No. L-11-1298, 2013-Ohio-205, ¶ 19 (citations omitted); *Burson v. Peoples Bank*, 3d Dist. Wyandot No. 16-92-31, 1993 Ohio App. LEXIS 4420, *6 (Sep. 1, 1993).

**{¶ 23}** In this case, appellant gave the purchase money to the Abawis and they conveyed the property, as directed by appellant, to the Company. Ammar attested he gave the purchase money to Yaser. Therefore, the wrongful conduct, if any, would be attributable to Yaser, not appellees. Even if Ammar had not paid the purchase price to Yaser as Ammar attested, there is no evidence that appellees took control of appellant's purchase money which was given to the Abawis.

**{¶ 24}** Therefore, appellant's third assignment of error is not well-taken.

## Cross-Appeal

**{¶ 25}** The cross-appellants assert the following assignment of error:

> The Lower Court erred in granting summary judgment for the Third-party Defendants.

10.

{¶ 26} In their counterclaim against the Abawis, cross-appellants sought declaratory judgment that the Abawis, as grantors, are obligated to defend the title they conveyed and indemnify cross-appellants against the losses or damages, including attorney fees and costs, in defense of the claims of appellant. Cross-appellants also asserted appellant's claims constituted a breach of the covenants in the general warranty deed the Abawis conveyed.

{¶ 27} In its August 24, 2015 judgment, the trial court held that dismissal of appellant's claims mooted the issue of whether the Abawis were liable for any losses incurred by cross-appellant as a result of a breach of the warranties contained in their general warranty deed. However, the court addressed the issue of whether the Abawis had a duty to defend against appellant's claims.

{¶ 28} The court concluded first that a duty to defend exists irrespective of whether the claim is valid by relying upon insurance law cases. See *Grange Mut. Cas. Co. v. Rosko*, 146 Ohio App.3d 698, 710, 2001-Ohio-3508, 767 N.E.2d 1225 (7th Dist.). We do not agree that these cases are applicable because the duty to defend in those cases arises out of the insurance policy contract. In the case before us, any duty to defend must arise out of the covenants in the deed.

{¶ 29} The deed in this case was a general warranty deed. R.C. 5302.06 provides that:

> In a conveyance of real estate, or any interest therein, the words "general warranty covenants" have the full force, meaning, and effect of the

11.

following words: "The grantor covenants with the grantee, his heirs, assigns, and successors, that he is lawfully seized in fee simple of the granted premises; that they are free from all encumbrances; that he has good right to sell and convey the same, and that he does warrant and will defend the same to the grantee and his heirs, assigns, and successors, forever, against the lawful claims and demands of all persons."

At issue in this case are the phrases "grantor covenants * * * premises * * * are free from all encumbrances" and "he does warrant and will defend the same." The statute and the deed contract language, which is clear, must be construed as written and do not require interpretation. *Alamin v. Trombley*, 2d Dist. Montgomery No. CA 10231, 1988 Ohio App. LEXIS 193, *3 (Jan. 19, 1988). The grantee warrants only that he will defend against all "lawful claims and demands of all persons" regarding his covenants that "he is lawfully seized in fee simple of the granted premises; that they are free from all encumbrances; that he has good right to sell and convey the same." R.C. 5302.06. Therefore, to trigger the duty to defend, there must be a lawful claim or demand that one of the other covenants in the warranty deed has been violated. See *Choquette v. Roy*, 114 A.3d 713 (N.H.2015); *Garden Townhouse Condo. Assn. v. Gogal*, App. No. 60164-4-I, 2009 Wash.App. LEXIS 497, *33 (Mar. 2, 2009). Some courts hold that the covenant of general warranty is not broken until the grantee is evicted because of a paramount title. *Jablonski v. Buckeye Dev. Corp.*, 597 So.2d 905, 906 (Fla.App.1992) (which requires that the claim be successful). However, we believe such a rule would render the duty to

12.

defend ineffective and eliminate the grantor's right to control the defense against the claim.

{¶ 30} In the case before us, therefore, we must first determine whether a valid claim of a breach of the covenant warranties has been presented.

{¶ 31} Appellant's first two claims are unrelated to the covenants in the deed. We agree with the trial court that the claims of unjust enrichment and conversion are claims against appellees personally for their alleged wrongful conduct. Furthermore, appellant sought only monetary damages. Therefore, these claims could never become encumbrances on the property.

{¶ 32} Appellant's third count asserts a claim the deed must be reformed to make appellant the titled owner because he paid the purchase price for the property to which the Company took title. Appellant sought an equitable remedy of a purchase money resulting trust, which would have given him equitable title to the property and the right to seek reformation of the deed and regain control of the property. See *Bell v. Vardalides*, 41 Ohio Law Abs. 586, 587, 59 N.E.2d 73 (2d Dist.1944). Such an action does not involve a breach of the grantor's general warranty covenants. See *Choquette v. Roy*, 114 A.3d 713 (N.H.2015). While the resulting trust attaches at the time of the conveyance, it did not involve the Abawis in the unique situation before us. *Rardin v. Estate of Bain*, 7th Dist. Carroll No. 08 CA 853, 2009-Ohio-3332, ¶ 96. While the Abawis knew that appellant supplied the purchase money, they did not know that he would claim to have retained equitable title to the property since he did not own legal title to the property at

13.

the time of the transfer to the Company.  Therefore, the Abawis did not have a duty to defend against this claim.  Accordingly, we find appellees/cross-appellants' sole assignment of error not well-taken.

{¶ 33} Having found the trial court did not commit error prejudicial to appellant or cross-appellants and that substantial justice has been done, the judgment of the Lucas County Court of Common Pleas is affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

_____
JUDGE

Thomas J. Osowik, J. _____

Stephen A. Yarbrough, J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.