**STEVENS v WILDESEN et**

Ohio Appeals, 6th Dist, Lucas Co

Decided April 20, 1936

Tyler, Wilson & Rhinefort, Toledo, and Williams, Eversman & Morgan, Toledo, for plaintiff.

Mulholland & Hartman, Toledo, Fraser, Effler, Shumaker & Winn, Toledo, Silas E. Hurin, Toledo, and Robert C. Dunn, Toledo, for defendants.

## OPINION

By LLOYD, J.

George H. Stevens, the plaintiff in the Court of Common Pleas, appeals to this court from a finding and decree of that court construing the will of his mother, Emma F. Stevens. The will was dated December 31, 1926, and Mrs. Stevens died January 4, 1927. George H. Stevens is her only surviving child.

After providing for the payment of debts, funeral expenses, care of a lot in Woodlawn Cemetery, a marker for her grave and the disposition of certain personal property. Mrs. Stevens bequeathed and devised the rest and residue of her property, real and personal, to a trust company in trust for certain designated relatives. The trustee was given complete power to administer the estate and to "sell and dispose of part or all of the estate * * * and to execute all deeds and assignments as it sees fit," and to re-invest the proceeds of any sale thereof.

In Item IV thereof the will provides that from the estate the trustee shall set apart one-fifth, and from the net income derived therefrom the trustee shall pay to George H. Stevens $1200 per annum "and in the event that the one-fifth part of said estate shall not produce the sum of $1200, then said trustee shall, out of the said one-fifth part of said principal so set aside for the said George H. Stevens, make up the balance of $1200 per annum."

In this item it is further provided that if George H. Stevens should become so incapacitated from sickness as to be unable to care for himself properly, then the trustee might pay to him such additional amount out of the one-fifth principal as in its absolute discretion it might deem necessary until such time as the entire principal should be exhausted and if he should die before the termination of the trust, or the exhaustion of the one-fifth principal, the trustee should pay his funeral and burial expenses, and if any part of the one-fifth so set aside to him remains the same shall pass to and become a part of the remaining four-fifths of her estate. This item of the will further provides that if the entire one-fifth should be exhausted in the care and maintenance of George H. Stevens before the termination of the trust, then the trustee should pay his funeral and burial expenses, not in excess of $1000 from the remaining four-fifths of the estate.

It also provides:

"Said trustee shall pay one-eighth of the net income from four-fifths of my estate to Elizabeth B. Stevens, her heirs or assigns;

"To Ethel Stevens Strasburg one-eighth of the net income from four-fifths of my estate;

"One-fourth of the net income from four-fifths of my estate to Frances Wildesen, her heirs and assigns;

"And to Marjorie Stevens, her heirs and assigns, one-fourth of the net income from four-fifths of my estate;

"And to Lucia Stevens, her heirs and assigns, one-fourth of the net income from four-fifths of my estate."

Item V of the will provides:

"My Granddaughter, Frances Wildesen, is now occupying the property located at 2363 Fulton Street, as her residence and if she desires to retain this property as a part of her inheritance, she shall so notify the trustee within six months after my decease and the same shall be valued for the purposes of this trust and also in distribution at Five Thousand Dollars ($5000) and during the existence of this trust she shall pay to the trustee interest at the rate of six percent as a rental, and pay the taxes and keep the same in repair. And at the time said trustee shall distribute this estate, she shall be charged with Five Thousand Dollars ($5000), and be entitled to a deed for 'said property."

Item VI reads as follows:

"This trust shall continue and be in force for a period of eight years from and after the date of my decease, and if said George H. Stevens shall be living at that time, said trustee shall turn over to him what remains of his one-fifth of my estate; and if he be not living, then there shall be paid and delivered to:

"Frances Wildesen, her heirs and assigns, one-fourth of the net estate of which the $5000 the value of the property at 2363 Fulton Street, shall be included; and

"One-fourth to Marjorie Stevens, her heirs and assigns;

"One-fourth to Lucia Stevens, her heirs and assigns;

"One-eighth to my daughter-in-law, Elizabeth B. Stevens;

"One-eighth to Ethel Strasburg if she be then living; if she be not living and has not disposed of her interest by will, then the same shall be divided among the other four heirs in the same proportion as above."

The plaintiff argues that, having outlived the eight-year trust period, the will by clear and unambiguous language vests in him, not only "what remains of his one-fifth estate," but also an intestate property, the remaining four-fifths of the decedent's estate, the income from which had theretofore been paid as provided in Item IV of the will, above quoted.

All of us are familiar with the rule of construction that the intention of the testatrix must be gathered from ██ the entire will, unaffected by extrinsic facts, unless there exists some ambiguity therein. We have not examined the testimony and exhibits in evidence, which, from arguments of counsel we assume relate to antagonisms, reconciliations, etc., between mother and son, for the reason that whether competent or not we think the construction to be given this will of Mrs. Stevens can be determined from her intention as expressed by the words used therein, appreciating that the meaning thereof can not be changed for the purpose of giving effect to what it may be supposed was the intention of the testatrix, or merely because they lead to consequences which are capricious or even harsh or unreasonable.

The Supreme Court has said that if a reading of the words in their primary or ordinary sense will lead to some absurdity, repugnancy or inconsistency █ with the declared intention of the testatrix, as ascertained from the whole will, the natural and ordinary meaning of the words may be modified, extended or abridged.

To isolate and disassociate from the other provisions of the will the words "if he be not living," found in Item VI thereof, and consider them as alone decisive of the construction to be given to the █ will, is subversive of and inconsistent with the intention of the testatrix as expressed in the will as a whole.

By Item IV of the will, plaintiff is given, during the eight-year period of the trust, an annual income from one-fifth of the estate, and the income from the remaining four-fifths of the estate is given, during that period, to the other named relatives of the testatrix. It seems significant that this item of the will gives the income allotted to each of those therein named, and to "her heirs and assigns," except in the case of Ethel Stevens Strasburg with respect to whom these words are omitted, leaving her share of the income, if she should die before the termination of the trust, to become a part of the principal of the estate, thereby increasing the income thereafter payable to the other recipients thereof; and Item VI provides that on distribution of the estate at the end of the trust if "she be then living" she shall receive one-eighth thereof, but if "she be not living and has not disposed of her interest by will, then the same shall be divided among the other four heirs," in the designated proportions, the share of George H. Stevens, however, remaining unchanged.

Item V of the will gives to the granddaughter of the testatrix the privilege of retaining "as a part of her inheritance"

the Fulton Street property—the same to be "valued for the purposes of this trust and also in distribution at $5,000 * * * and at the time said trustee shall distribute this estate, she shall be charged· with $5,000 and be entitled to a deed for said property." At what time and in distribution of what? Evidently and clearly in distribution of the estate as provided in Item VI at the termination of the trust. Unless that was the avowed intention, these words seem meaningless.

Item VI provides for the exact proportions in the distribution of the estate at the termination of the trust, as does Item IV for the payment of the income therefrom during the continuance of the trust, except as to the contingency of the death of Ethel Stevens Strasburg. If in the contingency of her son being alive at the termination of the trust, Mrs. Stevens intended by her will that not only the remainder of the one-fifth should be delivered to him, but also that in addition thereto the remaining estate should descend to him as intestate property, it would have been unnecessary and absurd to provide. that, if living, the trustee should "turn over to him what remains of his one-fifth estate."

Surely that much of this provision is clear and can not be questioned. "If he be not living, then there shall be paid and delivered" to the other named relatives the proportionate designated portions of her estate, of whatever it may then consist, including "what remains of his one-fifth estate."

So construing the will its various provisions harmonize and express the unequivocal intention of the testatrix, leaving no undisposed of intestate property.

Decree accordingly.

OVERMYER and CARPENTER, JJ, concur.